UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| The State of LOUISIANA, By and through its Attorney General, Elizabeth B. Murrill; et al., <br><br> PLAINTIFFS, <br><br> v. <br><br> Joseph R. BIDEN, Jr. in his official capacity as President of the United States; et al., <br><br> DEFENDANTS. | Civil Action No. 2:24-cv-00406-JDC-TPL <br><br> Judge James D. Cain, Jr. <br> Magistrate Judge Thomas P. LeBlanc |

**PLAINTIFFS' REPLY TO DEFENDANTS' CONSOLIDATED
RESPONSE TO AMICUS BRIEFS**

## INTRODUCTION

On January 26, 2024, Defendants halted consideration and approval of applications to export liquified natural gas (LNG) to non-Free Trade Agreement (non-FTA) countries effective immediately. This decision—the LNG Export Ban—contravenes the Natural Gas Act's mandate that the Department of Energy *shall* authorize exports upon application *unless* it finds the proposed exports will be inconsistent with the public interest after an opportunity for hearing. 15 U.S.C. § 717b(a). Under the Ban, Defendants are not considering or approving applications to export LNG to non-FTA countries even though (1) there has been an opportunity for hearing on the pending applications, and (2) there has been no finding that the exports will be inconsistent with the public interest.

In issuing the LNG Export Ban, the Department of Energy asserted that it is responsible for "evaluat[ing] the public interest of proposed exports" to non-FTA countries and needs to "pause" determinations on applications so it can update its public-interest analysis. Pls.' Ex. 27. The Department touted this action as part of its commitment to "protect[] Americans against climate change." *Id.* Similarly, in heralding the Department's action, President Biden declared that the "pause on new LNG approvals sees the climate crisis for what it is: the existential threat of our time." Pls.' Ex. 26. He promised his Administration would "take a hard look" at the "impacts of LNG exports" on the environment, *id.*, and "continue to lead the way in ambitious climate action," Pls.' Ex. 29.

Plaintiffs sued Defendants over the LNG Export Ban and moved for a stay or preliminary injunction. Plaintiffs' briefs demonstrate that the LNG Export Ban is unlawful and causes irreparable harm that merits preliminary relief, which is in the public interest. Amici Center for LNG (the "Center") and American Petroleum Institute submitted amicus briefs in support of Plaintiffs' motion for preliminary relief.

The Center's brief focuses on Defendants' update of the Department's public-interest analysis. It provides three reasons why it is unlawful for the Department to incorporate "how natural gas

1

production and consumption contributes to global climate change" into its public-interest analysis. Center's Br. 2. The American Petroleum Institute's brief focuses on the Ban—what it terms the "Indefinite Pause"—on authorizing LNG export applications to non-FTA countries. API Br. 2. It provides additional support for Plaintiffs' argument that the LNG Export Ban contradicts the Natural Gas Act's clear mandate, as well as some of Plaintiffs' other APA arguments. It also emphasizes how the equities favor preliminary relief.

Defendants insist the Court should reject Amici's arguments, relying on the same tactics it employs in responding to Plaintiffs' brief: mischaracterization and avoidance. Defendants' attacks on Amici's briefs are mistaken and simply underscore that the LNG Export Ban is unlawful and that preliminary relief will not only lessen Plaintiffs' irreparable harm, but also advance the public interest.

## ARGUMENT

**I. THE AMERICAN PETROLEUM INSTITUTE FURTHER DEMONSTRATES THAT PLAINTIFFS' CLAIMS ARE LIKELY TO SUCCEED AND THAT THE EQUITIES FAVOR PRELIMINARY RELIEF.**

### A. Defendants Misconstrue the Natural Gas Act and the American Petroleum Institute's Arguments.

The American Petroleum Institute ("API") argues (at 3) that the LNG Export Ban violates the Natural Gas Act because, among other flaws, it contradicts the Act's "clear mandate that DOE shall issue export permits unless it makes a specific finding that the permit is not in the public interest." This is a correct interpretation of the Act, which Defendants cannot rebut. Accordingly, they resort to mischaracterizing API's argument.

Defendants claim (at 7) that API "ignores the statutory difference between FTA exports (which, under Section 3(c) of the Natural Gas Act, DOE must authorize) and non-FTA exports (which, under Section 3(a) of the Natural Gas Act, require DOE to make a public interest determination before acting on an application)." This strawman attack fails. API does not ignore the Department's statutory authority to make a public-interest determination. It recognizes (at 3) that the

2

Department can deny an export application when it "makes a specific finding . . . that the project would 'not be consistent with the public interest.'" What the Department cannot do—and what the LNG Export Ban does—is refuse to approve LNG export applications to non-FTA countries despite making *no* finding that a proposed export is inconsistent with the public interest.

Defendants also contend (at 7) that API "suggests that the statute's mandatory language somehow precludes DOE from updating the information it relies upon in making the public interest determination." But API argues no such thing, and the Department is free to update the information on which it relies. Indeed, it routinely does. The Department conducts studies, updates studies, and, "[i]n each non-FTA order, . . . considers information from the most recent long-term projections of domestic natural gas supply and demand (and other relevant data) issued by the U.S. Energy Information Administration (EIA) and evaluates that information as part of its analysis." Pls.' Ex. 16 at 15; *see id.* at 13–15. The statutory language therefore does not preclude the Department from updating information. What it does preclude is using a purported need to update information as justification to refuse to approve non-FTA export applications across the board. Defendants thus continue to have no answer to the argument that the LNG Export Ban flouts the Natural Gas Act's unambiguous language.

### B. Preliminary Relief Will Further the Public Interest.

API also argues (at 6–13) that preliminary relief will serve the public interest, because the LNG Export Ban undermines national security, delays reductions in global emissions, and undermines industry reliance interests. For example, API catalogues (at 6–10) at length how the LNG Export Ban "disrupt[s] energy markets across the world during a critical time of geopolitical turmoil and uncertainty," benefits Russia and hurts U.S. allies, and "undercuts a major American industry" that had been projected to "support 71,500 jobs annually" and "boost GDP by $46 billion" from 2025 to 2030. API also describes (at 12) how "[m]assive LNG export projects are not conceived overnight"

3

and how the LNG Export Ban undermines "substantial reliance interests for producers, financers, and investors."

Defendants offer no response to most of these arguments. For example, they have no answer to API's arguments that the LNG Export Ban has negative impacts on energy security and the Nation's economic strength. Defendants do, however, acknowledge API's argument about reliance interests. Yet, once again, Defendants mischaracterize the argument rather than directly responding.

Defendants argue (at 7–8) that API "seems to suggest that DOE is never supposed to update the information it relies upon when considering economic and environmental impacts" and that API "suggests that the LNG industry relies on DOE never updating the information it uses." Defendants then rebut this imaginary argument by pointing to the Department's longstanding practice of updating information and to regulations that recognize the Department's need for "sufficient information on which to base a public interest determination." Defs.' Resp. at 8 (quoting *Proposed Procedures for Liquefied Natural Gas Export Decisions*, 79 Fed. Reg. 32,261-01, 32,263 (June 4, 2014)).[1] Defendants are, of course, allowed to rely on updated information. And the Department has been updating its studies and the information on which it relies for years. That is not the problem that threatens to undercut industry reliance interests. The problem is the LNG Export Ban. The unprecedented halting of consideration and approval of LNG export applications to non-FTA countries is what is disrupting the natural gas industry and undercutting reliance interests.

---

[1] Defendants quote the proposed regulations, rather than the final regulations. The final regulations make clear that the "sufficient information" requirement simply allows the Department to request additional information from an applicant and make sure the record in a particular proceeding is complete before making a decision. *See Procedures for Liquified Natural Gas Export Decisions*, 79 Fed. Reg. 48,132, 48,135 (Aug. 15, 2014) ("In the revised procedures, DOE will retain the requirement that it have sufficient information on which to base a public interest determination as a predicate to final action. The commenter is correct that the Natural Gas Act creates a rebuttable presumption in favor of authorizing imports and exports. But that presumption does not remove DOE's power to impose informational requirements on applicants or to decide when it has a complete record on which to base its decision."). These regulations provide no justification for the LNG Export Ban.

Therefore, API's arguments, along with Defendants' inability to respond to them, further confirm that Plaintiffs are likely to succeed on the merits of their claims and that granting preliminary relief is in the public interest.

## II. THE CENTER FOR LNG UNDERSCORES HOW THE LNG EXPORT BAN IS UNAUTHORIZED.

Because the Center focuses on the substance of Defendants' update of the public-interest analysis—the purported motivation for the Ban—rather than the LNG Export Ban itself, the Court need not confront the Center's arguments (and Defendants' responses) in deciding Plaintiffs' motion for preliminary relief. As such, Plaintiffs will not detail and rebut all of Defendants' mischaracterizations of the Center's arguments, which appear to be intended to unnecessarily bog down this Court's review of Plaintiffs' motion.

The Center's arguments, however, are not completely irrelevant, as Defendants would have the Court believe. To the contrary, they highlight the lack of statutory authority for the LNG Export Ban. Plaintiffs accordingly will address one such argument that helps underscore the Ban's unlawfulness.

The Center explains (at 8–9) that the Natural Gas Act's "principal purpose" is "to encourage the orderly development of plentiful supplies of . . . natural gas at reasonable prices." *NAACP v. Fed. Power Comm'n*, 425 U.S. 662, 669–70 (1976). And the Natural Gas Act's (and Federal Power Act's) use of the term "public interest" is "a charge to promote the orderly production of plentiful supplies of electric energy and natural gas at just and reasonable rates." *Id.* at 670. This further supports Plaintiffs' arguments that the LNG Export Ban violates the Natural Gas Act. Defendants undermine the precise public interest the Act seeks to promote—the orderly and plentiful production of natural gas—by halting the Department's review and approval of LNG export applications. The Ban is thus antithetical to the Act and to the Department's statutory role.

5

Notably, Defendants do not dispute the primary purpose of the Natural Gas Act. Defendants instead point out that the Supreme Court recognizes the Act has "subsidiary purposes," which "allow[s] the agency to 'consider conservation, *environmental*, and antitrust questions." Defs.' Br. at 6 (quoting *NAACP*, 425 U.S. at 670 & n.6). That is technically true, but misleading and ultimately beside the point. The Supreme Court cited provisions in the Natural Gas Act and Federal Power Act that expressly give the agency the "authority" to consider questions in those categories, *NAACP*, 425 U.S. at 670 n.6, but statutory authority to consider, for example, whether a hydroelectric project adequately "protect[s], mitigate[s], and enhance[s] . . . fish and wildlife" does not somehow extend to give the agency the authority to consider the potential impacts of LNG exports on climate change, 16 U.S.C. § 803(a)(1). In any event, even if environmental concerns are a subsidiary purpose of the Natural Gas Act, a subsidiary purpose cannot be elevated over what Defendants do not dispute is the Act's principal purpose: encouragement of orderly and plentiful natural gas production. Defendants have no statutory authority to halt consideration and approval of LNG export applications to non-FTA countries and to diminish the production of natural gas in order to advance Defendants' climate-change agenda.

## CONCLUSION

The briefs from Amici provide further support for Plaintiffs' arguments that the LNG Export Ban is unlawful and that preliminary relief is warranted.

Dated: May 31, 2024

Tyler R. Green*
Daniel Shapiro*
CONSOVOY MCCARTHY PLLC
222 S. Main Street, 5th Floor
Salt Lake City, UT 84101
(703) 243-9423

Respectfully submitted,

**ELIZABETH B. MURRILL**
**Attorney General of Louisiana**

  /s/ Morgan Brungard
Morgan Brungard (La #40298)
  *Deputy Solicitor General*
/s/ Autumn Hamit Patterson
Autumn Hamit Patterson*
  *Special Assistant Solicitor General*
OFFICE OF THE LOUISIANA ATTORNEY
GENERAL
1885 North Third Street
Baton Rouge, LA 70804
(225) 326-6766
brungardm@ag.louisiana.gov

*Counsel for Plaintiff State of Louisiana*

7

**KEN PAXTON**
**Attorney General of Texas**
**BRENT WEBSTER**
**First Assistant Attorney General**
**JAMES LLOYD**
**Deputy Attorney General for Civil Litigation**
**KELLIE E. BILLINGS-RAY**
**Chief, Environmental Protection Division**

/s/ Ian M. Lancaster
Ian M. Lancaster*
  *Assistant Attorney General*
H. Carl Myers*
  *Assistant Attorney General*
OFFICE OF THE ATTORNEY
GENERAL OF TEXAS
ENVIRONMENTAL PROTECTION DIVISION
P.O. Box 12548, MC-066
Austin, Texas 78711-2548
Telephone (512) 463-2012
Facsimile (512) 320-0911
Ian.Lancaster@oag.texas.gov
Carl.Myers@oag.texas.gov

*Counsel for Plaintiff State of Texas*

**LYNN FITCH**
**Attorney General of Mississippi**

 /s/ Justin L. Matheny
Justin L. Matheny*
  *Deputy Solicitor General*
MISSISSIPPI ATTORNEY GENERAL'S
OFFICE
P.O. Box 220
Jackson, MS 39205
(601) 359-3680
justin.matheny@ago.ms.gov

*Counsel for Plaintiff State of Mississippi*

**STEVE MARSHALL**
**Attorney General of Alabama**

/s/ Edmund G. LaCour Jr.
Edmund G. LaCour Jr.*
  *Solicitor General*
OFFICE OF THE ATTORNEY GENERAL
STATE OF ALABAMA
501 Washington Avenue
P.O. Box 300152
Montgomery, Alabama 36130-0152
Telephone: (334) 242-7300
Fax: (334) 353-8400
Edmund.LaCour@AlabamaAG.gov

*Counsel for Plaintiff State of Alabama*

8

**TREG TAYLOR**
**Attorney General of Alaska**

*/s/Mary Hunter Gramling*
Mary Hunter Gramling*
STATE OF ALASKA
DEPARTMENT OF LAW
P.O. Box 110300
Juneau, AK 99811-0300
Telephone: (907) 465-3600
Facsimile: (907) 465-2520
Email: mary.gramling@alaska.gov

*Counsel for Plaintiff State of Alaska*

**TIM GRIFFIN**
**Attorney General of Arkansas**

*/s/Nicholas J. Bronni*
Nicholas J. Bronni*
  *Solicitor General*
Dylan L. Jacobs*
  *Deputy Solicitor General*
OFFICE OF THE ARKANSAS ATTORNEY
GENERAL
323 Center Street, Suite 200
Little Rock, AR 72201
(501) 682-6302
Nicholas.Bronni@ArkansasAG.gov
dylan.jacobs@arkansasag.gov

*Counsel for Plaintiff State of Arkansas*

**ASHLEY MOODY**
**Attorney General of Florida**

*/s/Natalie P. Christmas*
Natalie P. Christmas*
  *Counselor to the Attorney General*
OFFICE OF THE FLORIDA ATTORNEY
GENERAL
PL-01 the Capitol
Tallahassee, Florida 32399
(850) 414-3300
natalie.christmas@myfloridalegal.com

*Counsel for Plaintiff State of Florida*

**CHRISTOPHER M. CARR**
**Attorney General of Georgia**

*/s/Stephen J. Petrany*
Stephen J. Petrany*
  *Solicitor General*
OFFICE OF THE ATTORNEY GENERAL
40 Capitol Square SW
Atlanta, Georgia 30334
(404) 458-3408
spetrany@law.ga.gov

*Counsel for Plaintiff State of Georgia*

**KRIS W. KOBACH**
**Attorney General of Kansas**

*/s/Erin B. Gaide*
Erin B. Gaide*
  *Assistant Attorney General*
Memorial Building, 2nd Floor
120 S.W. 10th Avenue
Topeka, Kansas 66612-1597
Tel: (785) 296-2215
Fax: (785) 296-2218
Email: erin.gaide@ag.ks.gov

*Counsel for Plaintiff State of Kansas*

**AUSTIN KNUDSEN**
**Attorney General of Montana**

*/s/Christian B. Corrigan*
Christian B. Corrigan*
  *Solicitor General*
MONTANA DEPARTMENT OF JUSTICE
215 North Sanders
P.O. Box 201401
Helena, Montana 59620-1401
(406) 444-2026
christian.corrigan@mt.gov

*Counsel for Plaintiff State of Montana*

9

**MICHAEL T. HILGERS**
**Attorney General of Nebraska**

*/s/ Grant D. Strobl*
Grant D. Strobl*
  *Assistant Solicitor General*
OFFICE OF THE NEBRASKA ATTORNEY GENERAL
2115 State Capitol
Lincoln, NE 68509
(402) 471-2683
Grant.Strobl@nebraska.gov

*Counsel for Plaintiff State of Nebraska*

**ALAN WILSON**
**Attorney General of South Carolina**

*/s/ Joseph D. Spate*
Joseph D. Spate*
  *Assistant Deputy Solicitor General*
1000 Assembly Street
Columbia, SC 29201
(803) 734-3371
josephspate@scag.gov

*Counsel for Plaintiff State of South Carolina*

**GENTNER DRUMMOND**
**Attorney General of Oklahoma**

*/s/ Garry M. Gaskins, II*
Garry M. Gaskins, II*
  *Solicitor General*
OFFICE OF OKLAHOMA ATTORNEY GENERAL
313 NE 21st Street
Oklahoma City, Oklahoma 73105
(405) 521-3921
Garry.Gaskins@oag.ok.gov

*Counsel for Plaintiff State of Oklahoma*

**SEAN D. REYES**
**Attorney General of Utah**

*/s/ Stanford E. Purser*
Stanford E. Purser*
  *Utah Solicitor General*
350 N. State Street, Suite 230
P.O. Box 142320
Salt Lake City, UT 84114-2320
Telephone: (801) 538-9600
spurser@agutah.gov

*Counsel for Plaintiff State of Utah*

| | |
|---|---|
| **PATRICK MORRISEY**<br>**Attorney General of West Virginia** | **BRIDGET HILL**<br>**Attorney General of Wyoming** |
| /s/ Michael R. Williams<br>Michael R. Williams*<br>  *Principal Deputy Solicitor General*<br>OFFICE OF THE WEST VIRGINIA<br>ATTORNEY GENERAL<br>1900 Kanawha Blvd. East<br>Building 1, Room E-26<br>Charleston, WV 25305<br>Tel: (304) 558-2021<br>Michael.R.Williams@wvago.gov<br><br>*Counsel for Plaintiff State of West Virginia* | /s/ D. David DeWald<br>D. David DeWald*<br>  *Deputy Attorney General*<br>OFFICE OF THE ATTORNEY GENERAL<br>OF WYOMING<br>109 State Capitol<br>Cheyenne, WY 82002<br>(307) 777-7895<br>david.dewald@wyo.gov<br><br>*Counsel for Plaintiff State of Wyoming* |

*\*Admitted Pro Hac Vice or admission application pending*

## CERTIFICATE OF SERVICE

I hereby certify that, on May 31, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participating attorneys.

/s/ Autumn Hamit Patterson
Autumn Hamit Patterson
