# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAKE CHARLES DIVISION

STATE OF LOUISIANA, *et al.*,

     Plaintiffs,

     v.

JOSEPH R. BIDEN, JR., *et al.*,

     Defendants.

Case No. 2:24-cv-00406

Hon. Judge James D. Cain, Jr.

Hon. Magistrate Judge Thomas P. LeBlanc

**REPLY IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

I.    The Court lacks jurisdiction over this case ......................................................................1

      A.    Plaintiffs are in the wrong court and their NGA-related claims are premature ...........1

      B.    Plaintiffs have not established standing by a preponderance of evidence ...................5

            1.    Plaintiffs' injury claims are contradicted by DOE's empirical evidence ...........5

            2.    Plaintiffs have failed to show how the Pause will substantially and directly negatively impact their future severance taxes........................................7

            3.    Plaintiffs have shown no cognizable injury from the actions of third parties........................................................................................................8

            4.    Plaintiffs have not shown their claimed relief will redress their speculative injuries .............................................................................................9

      C.    Plaintiffs' have not identified a final agency action for their APA claims...................10

II.   Counts I–IV, XII, and XIV–XVI should be dismissed under Rule 12(b)(6)..........................11

      A.    DOE's Pause is well within the scope of its authority under the NGA......................11

      B.    The Update is a component of DOE's adjudicatory process, not a rule ...................13

      C.    The Update is consistent with DOE's July 2023 Order .................................................14

      D.    An alleged violation of the Congressional Review Act is unreviewable......................15

III.  Conclusion...........................................................................................................................15

## TABLE OF AUTHORITIES

**Cases**

*Axon Enter., Inc. v. Fed. Trade Comm'n,*
   598 U.S. 175 (2023) .................................................................................................2

*Bywater Neighborhood Ass'n v. Tricarico,*
   879 F.2d 165 (5th Cir. 1989) ............................................................................. 3, 4

*City of Rochester v. Bond,*
   603 F.2d 927 (D.C. Cir. 1979) ...............................................................................3

*Clapper v. Amnesty Int'l USA,*
   568 U.S. 398 (2013) .................................................................................................8

*Colo. Interstate Gas Co. v. Fed. Power Comm'n,*
   324 U.S. 581 (1945) ......................................................................................... 12, 13

*Ctr. for Marine Conservation v. Brown,*
   917 F. Supp. 1128 (S.D. Tex. 1996) .....................................................................10

*Data Mktg. P'ship, LP v. United States Dep't of Lab.,*
   45 F.4th 846, 853 (5th Cir. 2022) .................................................................. 10, 11

*Favela v. Collier,*
   91 F.4th 1210 (5th Cir. 2024) ................................................................................5

*FCC v. WNCN Listeners Guild,*
   450 U.S. 582 (1981) ...............................................................................................12

*FDA v. Alliance for Hippocratic Medicine,*
   No. 23-235, 2024 WL 2964140 (S. Ct. June 13, 2024) .........................................8

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.,*
   561 U.S. 477 (2010) .................................................................................................2

*Gonzalez v. Cuccinelli,*
   No. 19-1435, 2021 WL 127196 (4th Cir. Jan. 14, 2021) .....................................12

*Gulfport Energy Corp. v. FERC,*
   41 F.4th 667 (5th Cir. 2022) ..................................................................................8

*Inclusive Communities Project, Inc. v. Department of Treasury,*
   946 F.3d 649 (5th Cir. 2019) ........................................................................... 9, 10

*JTB Tools & Oilfield Servs., L.L.C. v. United States,*
   831 F.3d 597 (5th Cir. 2016) ..................................................................................5

*Kansas Nat. Res. Coal. v. U.S. Dep't of Interior,*
   971 F.3d 1222 (10th Cir. 2020) ............................................................................15

*Ligon v. LaHood,*
   614 F.3d 150 (5th Cir. 2010) ..................................................................................2

*Louisiana v. Dep't of Homeland Sec.,*
   No. CV 23-1839, 2024 WL 1328434 (E.D. La. Mar. 28, 2024)..........................................8

*Lujan v. Defs. of Wildlife,*
   504 U.S. 555 (1992)..........................................................................................................9

*Magnolia Petrol. Co. v. Fed. Power Comm'n,*
   236 F.2d 785 (5th Cir. 1956).........................................................................................3, 4

*Media Access Proj. v. FCC,*
   883 F.2d 1063 (D.C. Cir. 1989).......................................................................................2

*Nat. Res. Def. Council v. Wheeler,*
   955 F.3d 68 (D.C. Cir. 2020).....................................................................................10, 11

*Raines v. Byrd,*
   521 U.S. 811 (1997)..........................................................................................................5

*Sima Prods. Corp. v. McLucas,*
   612 F.2d 309 (7th Cir. 1980).........................................................................................2, 3

*Summers v. Earth Island Inst.,*
   555 U.S. 488 (2009)..........................................................................................................8

*Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc.,*
   778 F.3d 502 (5th Cir. 2015)............................................................................................5

*Superior Oil Co. v. FERC,*
   563 F.2d 191 (5th Cir. 1977)..........................................................................................12

*Syracuse Peace Council v. FCC,*
   867 F.2d 654 (D.C. Cir. 1989)........................................................................................12

*Telecomms. Rsch. & Action Ctr. v. FCC,*
   750 F.2d 70 (D.C. Cir. 1984)............................................................................................5

*Tenneco, Inc. v. FERC,*
   688 F.2d 1018 (5th Cir. 1982).......................................................................................3, 4

*Texas Sav. & Cmty. Bankers Ass'n v. Fed. Hous. Fin. Bd.,*
   201 F.3d 551 (5th Cir. 2000)..........................................................................................14

*Thunder Basin Coal Co. v. Reich,*
   510 U.S. 200 (1994)..........................................................................................................2

*TransUnion LLC v. Ramirez,*
   594 U.S. 413 (2021)..........................................................................................................9

*Transwestern Pipeline Co. v. FERC,*
   820 F.2d 733 (5th Cir. 1987)..........................................................................................12

*Tugaw Ranches, LLC v. U.S. Dep't of the Interior,*
   362 F. Supp. 3d 879 (D. Idaho 2019)..............................................................................15

*Veldhoen v. U.S. Coast Guard,*
  35 F.3d 222 (5th Cir. 1994) ................................................................................................10

*Wages & White Lion Invs., L.L.C. v. FDA,*
  90 F.4th 357 (5th Cir. 2024) ..............................................................................................15

*Williamson v. Tucker,*
  645 F.2d 404 (5th Cir. 1981) ................................................................................................5

*Wyoming v. Oklahoma,*
  502 U.S. 437 (1992) ..............................................................................................................7

**Statutes**

15 U.S.C. § 717b ....................................................................................................................12

15 U.S.C. § 717b(a) ...............................................................................................................12

5 U.S.C. § 551(4) ............................................................................................................13, 14

5 U.S.C. § 805 .......................................................................................................................15

**Other Authorities**

79 Fed. Reg. 48,132 (Aug. 15, 2014) .....................................................................................9

88 Fed. Reg. 25, 272 (Apr. 26, 2023) .....................................................................................6

Plaintiffs suggest that the parties' differing characterizations of what the Department of Energy ("DOE") has done—or not done—is a matter of semantics.  Opp. To Defs.' Mot. to Dismiss 2, ECF No. 63.  Words matter.  DOE has not prohibited anything—hence there is no ban.  Instead, it recognized that the unprecedented and exponential growth of the liquefied natural gas ("LNG") market since its public interest data was last revised necessitates an update (hereinafter, the "Update").  Further realizing that this Update is only meaningful to the extent it can be applied, DOE paused making final decisions on export applications to non-Free Trade Agreement ("FTA") countries until the Update is completed (hereinafter, the "Pause").  The Natural Gas Act ("NGA") allows the Update and associated temporary Pause.

Plaintiffs admit the Update is legal.  *Id.* at 5. They challenge DOE's "authority to halt consideration and approval of LNG export applications while conducting a[n] . . . update and review of the public-interest analysis."  *Id.* at 6.  Thus, Plaintiffs' case boils down to one question—must DOE issue final decisions on pending applications while it updates its statutorily required public interest analysis?  The answer is clearly no.  But the Court need not reach this question because the Complaint should be dismissed for lack of jurisdiction.  Alternatively, Counts I–IV, XII, and XIV–XVI should be dismissed under Rule 12(b)(6).

## I.     The Court lacks jurisdiction over this case.

### A.  Plaintiffs are in the wrong court and their NGA-related claims are premature.

Defendants have already discussed at length that 15 U.S.C. § 717r supersedes the district court's general subject matter jurisdiction by vesting exclusive judicial review of export authorizations, and issues "inextricably intertwined" or "inhering" in export authorizations, in the federal courts of appeals.  Defs.' Mot. to Dismiss 21-25, ECF No. 56.  In response, Plaintiffs argue their claims are not a collateral attack on a final agency order and thus fall outside § 717r's exclusive review scheme.  ECF No. 63 at 9.  But Plaintiffs cannot seriously argue that their requested relief will not impact DOE's

adjudications of export applications.  After all, the logical implication of Plaintiffs' argument is that DOE must process pending applications while DOE's Update is ongoing, which would require DOE to process applications with stale public interest data.  It is hard to imagine a claim more "inescapably intertwined with a challenge to the procedure and merits of" DOE's adjudications of export applications.  *Ligon v. LaHood*, 614 F.3d 150, 157 (5th Cir. 2010).[1]  Plaintiffs make similar arguments attempting to distinguish *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), and its progeny, but those arguments are equally unavailing, ECF No. 63 at 11–12, because: (1) Plaintiffs can easily seek judicial review in the court of appeals; (2) Plaintiffs' challenge is a direct attempt to interfere with DOE's adjudicatory process; and (3) DOE's decision to pause adjudications because its existing public information data is stale is within the scope of its technical expertise.[2]

Plaintiffs also argue that DOE's pause falls outside the scope of the NGA's exclusive review provision because it is not an "order" within the meaning of § 717r.  ECF No. 63 at 8–9.  But Plaintiffs' attempt to redefine DOE's action as a rule or regulation has no meaning for the purposes of § 717r.  Courts have generally held that where a statute vests exclusive jurisdiction in the court of appeals to review the "order" of an agency, the court of appeals also has exclusive jurisdiction to review related rules and regulations.  *See, e.g.*, *Media Access Proj. v. FCC*, 883 F.2d 1063, 1067 (D.C. Cir. 1989); *Sima*

---

[1] Contrary to Plaintiffs' assertions, ECF No. 63 at 10, *Ligon* does not stand for the proposition that only collateral challenges to final orders fall within the purview of an exclusive review provision.  614 F.3d at 157. *Ligon* was reviewing a final order of the Federal Aviation Administration, so it did not address whether a preemptive challenge to the agency's procedures and process fell within the scope of the exclusive review provision.  *Id.*  But other Fifth Circuit decisions have considered this issue and held that plaintiffs cannot prematurely challenge an agency's interlocutory orders or processes—they must wait for a final order, exhaust their remedies, and then comply with the exclusive review provision.  *See infra* at 4–6.

[2] Plaintiffs' reliance on *Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 188 (2023) and *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 490 (2010), is misplaced.  Those cases involved "extraordinary claims" challenge the very existence and structure of sub-agencies.  Here, Plaintiffs do not contest DOE's right to exist.  They do not even contest DOE's right to update the data it relies upon in making public interest determinations.  They only challenge DOE's authority to pause adjudications until DOE receives the updated information.  Plaintiffs' challenge falls squarely within *Thunder Basin*'s framework.

*Prods. Corp. v. McLucas*, 612 F.2d 309, 313 (7th Cir. 1980); *City of Rochester v. Bond*, 603 F.2d 927, 936 (D.C. Cir. 1979). In *Sima*, for example, the Seventh Circuit rejected the plaintiffs' attempt to "skirt" the exclusive review provision by narrowly construing the term "order," to exclude rules and regulations. 612 F.2d at 312–13. The Seventh Circuit held that this narrow construction would frustrate "the purposes of special review statutes." *Id.* This Court should similarly reject Plaintiffs' narrow construction of NGA § 717r. Because Plaintiffs' claims touch on the export authorization process, they belong in the court of appeals—not district court—regardless of whether DOE issued a final order, rule or regulation or, as here, took interlocutory action.

Plaintiffs also cite DOE's conclusion that the Pause is not a *final* order under its regulations and argue that only final orders fall within § 717r's purview. ECF No. 63 at 8. DOE's conclusion that the Pause is not a final order only makes Plaintiffs' case worse. The fact that DOE has only taken an interlocutory step in its adjudicatory process does not shift exclusive court of appeals review to districts courts; it simply means that Plaintiffs' claims are premature and thus contrary to the limits on judicial review under the NGA. The Fifth Circuit has long recognized that where an exclusive jurisdictional provision vests review of an agency's order in the courts of appeals, all issues touching upon the order, not just the final order itself, are reviewable only by those courts. *See, e.g., Bywater Neighborhood Ass'n v. Tricarico*, 879 F.2d 165, 168 (5th Cir. 1989); *Tenneco, Inc. v. FERC*, 688 F.2d 1018, 1020 (5th Cir. 1982); *Magnolia Petrol. Co. v. Fed. Power Comm'n*, 236 F.2d 785, 793 (5th Cir. 1956).

In *Bywater Neighborhood*, a homeowners association sought removal of a 200–foot television microwave tower, which had only been conditionally permitted by the Federal Communications Commission ("FCC"). 879 F.2d at 166. The homeowners' association claimed the television tower violated various statutes and filed an Administrative Procedure Act ("APA") claim in district court. *Id.* at 166–167. The Fifth Circuit affirmed the district court's dismissal of the case, finding that the exclusive review provisions governing FCC orders displaced any jurisdiction conferred on the district

court by the other statutes under which plaintiffs filed suit. *E.g.*, *id.* at 168 ("[T]he APA was not a proper vehicle for circumventing the special statutory review process."). The Fifth Circuit noted that, even though the FCC had not issued a final order approving the license, the exclusive review provisions still applied, and plaintiffs' challenge was premature. *Id.* at 169.

Likewise, in *Tenneco, Inc.*, the plaintiff petitioned the Federal Power Commission ("FPC") for a declaratory order that sixty-four independent producers had obtained proper certificate and abandonment authorization under NGA Section 7 to allow natural gas to be transferred from one of plaintiff's subsidiaries to another. 688 F.2d at 1019. The FPC responded by issuing an "Order Instituting Investigation" and directing the affected producers to respond to the petition. *Id.* After an initial adjudicatory proceeding, an order was issued staying the proceeding and transferring the investigation to the newly formed Office of Enforcement. *Id.* at 1020. Plaintiff sued, challenging the order delaying the proceeding. *Id.* The Fifth Circuit dismissed plaintiff's suit, finding that the challenged order was interlocutory and therefore premature and unreviewable until the agency issued a final order per 15 U.S.C. § 717r. *Id.* The plaintiffs thereafter complied with the NGA's exhaustion requirements. *Id.*

Finally, in *Magnolia Petroleum Co.*, the Fifth Circuit rejected a challenge by several companies to FPC's Order 174, which defined which companies would qualify as a "natural gas company" and which companies would qualify as "independent producers" and setting forth certain requirements for independent producers. 236 F.2d at 788. The Fifth Circuit held that Order 174 was unreviewable under § 717r because it did not formally adjudicate the status of the plaintiffs. *Id.* Plaintiffs would have to wait for a final order adjudicating their own status before seeking review in the court of appeals.

These cases make clear that not only are Plaintiffs in the wrong court, but their challenge is premature. When DOE issues an order authorizing or denying authorization for LNG exports, § 717r

allows parties (including States, should they be granted intervention) to seek rehearing, and then seek review in the appropriate court of appeals (assuming they have standing). This Court should not entertain this premature challenge.

Plaintiffs also suggest that their unreasonable delay claim under the APA falls outside the scope of § 717r's exclusive review provision. ECF No. 63 at 10 n.9. They are wrong. There is ample authority that unreasonable delay claims under the APA are governed by the applicable exclusive review provision and can only be heard by the court of appeals. *See JTB Tools & Oilfield Servs., L.L.C. v. United States*, 831 F.3d 597, 599-601 (5th Cir. 2016); *Telecomms. Rsch. & Action Ctr. v. FCC*, 750 F.2d 70, 75 (D.C. Cir. 1984).

### B. Plaintiffs have not established standing by a preponderance of evidence.

Defendants submitted two declarations[3] and relied on additional evidence to show that Plaintiffs have not demonstrated standing to bring their complaint or to support their preliminary injunction motion. Based on this rebuttal, "no presumptive truthfulness attaches to [the] plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir. 1981). To defeat a factual challenge under Rule 12(b)(1), Plaintiffs must demonstrate standing by a preponderance of evidence. *Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015). They have failed to do so.[4]

### 1. Plaintiffs' injury claims are contradicted by DOE's empirical evidence.

Plaintiffs argue that "if not for the Ban, some export applications would be approved and

---

[3] The States argue Defendants' declarations are "self-serving" and improper. ECF No. 63 at 6-17, 8 n.6. As the declarations make clear, DOE's declarants have substantial personal knowledge and expertise in the LNG permitting process and the U.S. and global natural gas markets, and their statements are substantiated by facts and proper citations. *See Favela v. Collier*, 91 F.4th 1210, 1213 (5th Cir. 2024).

[4] Courts must be "especially rigorous" in examining standing where, as here, a suit challenges "whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Raines v. Byrd*, 521 U.S. 811, 819–20 (1997).

some increase in LNG exports would occur," ECF No. 63 at 19-20, and that a "world with a Ban inevitably means less production and less revenue than a world without a Ban." *Id.* at 21. Both points are pure speculation. Here are the facts. First, DOE has approved a cumulative volume of over 48 billion cubic feet per day (Bcf/d) of LNG exports to non-FTA countries, yet the United States' current export capacity is a fraction of that at 14 Bcf/d, resulting in a significant "authorization overhang." ECF No. 56-3 at 1; Wade Decl. ¶¶ 49–50, ECF No. 56-1; Sweeney Decl. ¶ 14, ECF No. 56-5.. This authorization overhang rebuts the claim that every export authorization increases in realized exports. Many LNG projects with DOE-approved exports never make it off the ground for reasons irrespective of the length of DOE's NGA review. Second, even with the Update and Pause (which affect no prior approvals) and the authorization overhang, LNG exports in 2024 already outpace 2023 exports. ECF No. 56-1 ¶¶ 50, 56. This fact rebuts Plaintiffs' conclusion that the "ban will decrease natural gas production," ECF No. 63 at 14, which they assert will in turn indirectly injure Plaintiffs.

Plaintiffs also argue that the Pause will lower tax revenues because the more applications that are authorized, the more tax revenues Plaintiffs will collect. ECF No. 63 at 19. Plaintiffs again speculate. First, the NGA does not specify a timeframe for DOE to act on LNG applications, *see, e.g.,* note 6, so even absent the Pause, there is no guarantee when applications will be authorized, if at all. Second, there is already a significant gap between export authorizations and realized projects—the aforementioned "authorization overhang"—which demonstrates that LNG approvals do not automatically result in realized exports and additional money in Plaintiffs' coffers. ECF No. 56-1, ¶¶ 58–69. Indeed, based on DOE's long experience of administering the NGA, it is uncertain that "all or even most of the proposed LNG export projects will ever be realized because of the time, difficulty, and expense of commercializing, financing, and constructing LNG export terminals, as well as the uncertainties and competition inherent in the global market for LNG." 88 Fed. Reg. 25, 272, 25,276 (Apr. 26, 2023).

**2. Plaintiffs have failed to show how the Pause will substantially and directly negatively impact their future severance taxes.**

Plaintiffs argue that a loss of severance taxes can be a cognizable injury and that Defendants "pretend" otherwise. ECF No. 63 at 25. Defendants do not dispute that a loss of severance taxes can be a cognizable injury under certain facts. ECF No. 56 at 31. But government action must still directly *cause* the loss of the taxes, as *Wyoming v. Oklahoma* instructs. 502 U.S. 437, 445 (1992). Plaintiffs skip that step.

As an initial matter, no applicant has canceled any project or withdrawn an LNG application because of the Update, which Plaintiffs do not dispute. Nevertheless, Plaintiffs' declarant claims Texas will still lose "state revenue" to the tune of over $200 million starting in 2027 because of the Pause. Pl.'s Ex. 44, ECF No. 13-46, ¶¶ 5-8. But those calculations are based on numerous faulty assumptions. ECF No. 56 at 27 n.16. Most notably, the declarant assumes that six of the pending LNG export applications will export LNG to non-FTA countries at 90 percent capacity two years after the projects' proposed completion dates, but for the Pause. ECF No. 13-46, ¶ 6(e). Three of those six projects are not even among the pending non-FTA export applications affected by the Update. ECF No. 56-5, ¶¶ 42–43. Two do not yet have FERC approval and thus are not ripe for DOE action (Venture Global, LLC's CP2 Project, Docket No. 21-131-LNG; and Corpus Christi Midscale Trains 8-9, Docket No. 23-46-LNG). The third (SeaOne Gulfport, LLC, Docket No. 16-22-CGL) has been in abeyance since 2019 at the applicant's request. Of the remaining three projects identified by the declarant, only one involves a project to be located in Texas (Port Arthur LNG Phase II, LLC), ECF No. 56-5, ¶ 42, and thus could plausibly yield tax revenue for that State. And even if that application were approved, numerous factors dictate when or if exports would actually be realized. *Id.* Even assuming Plaintiffs established that the Pause would result in deferred or delayed investment by any company (which they have not), it would take yet another step—requiring yet further speculation— to conclude that such delay would result in the irreparable loss of any such project and the associated

7

tax revenues.  Unlike in *Wyoming*, Plaintiffs have not shown that the Update and Pause will directly result in lost severance taxes that Plaintiffs would have otherwise collected.

### 3.  Plaintiffs have shown no cognizable injury from the actions of third parties.

It is "substantially more difficult" to show standing when government action affects someone else, which is the case here, considering none of the Plaintiffs have pending LNG export applications. *Summers v. Earth Island Inst.,* 555 U.S. 488, 493 (2009).  Because Plaintiffs' claimed injuries have no direct link to the Update and Pause, Plaintiffs rely on "on a highly attenuated chain of possibilities" that "require[s] guesswork as to how independent decisionmakers will exercise their judgment." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013).  Such speculation does not establish standing.

Plaintiffs claim the Update and Pause are causing two companies to delay investments that will indirectly reduce Plaintiffs' revenues. *See* ECF No. 63 at 21-22.  These actions fail to show justiciable injury for three reasons.  First, "the injury has to be 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.'" *Louisiana v. Dep't of Homeland Sec.*, No. CV 23-1839, 2024 WL 1328434, at *3 (E.D. La. Mar. 28, 2024).  Here, whether Plaintiffs are injured depends on the decision-making of third-party companies and the multitude of factors those companies consider before investing billions of dollars in an LNG export facility.  *See FDA v. Alliance for Hippocratic Medicine,* No. 23-235, Slip Op. (S. Ct. June 13, 2024) ("The causation requirement precludes speculative links—that is, where it is not sufficiently predictable how third parties would react to government action or cause downstream injury to plaintiffs.").

Second, a "mere delay or inconvenience from having to endure or await further proceedings generally does not aggrieve a party." *Gulfport Energy Corp. v. FERC*, 41 F.4th 667, 676 (5th Cir. 2022).  For more than a decade, LNG applicants have known of potential processing delays.  Procedures for

Liquefied Natural Gas Export Decisions, 79 Fed. Reg. 48,132, 48,135 (Aug. 15, 2014) (LNG export applications can only occur "when DOE has sufficient information on which to base a public interest determination."). The lawful Update and Pause, which are temporary, do not aggrieve applicants and certainly do not injure Plaintiffs, which are another step removed from the government action.

Finally, Plaintiffs fail to show by a preponderance of evidence how the alleged actions of two companies cause them substantial, particularized, and imminent harm. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 435 (2021). Conclusory statements not backed up by any concrete evidence are insufficient. ECF No. 63 at 21-23. And, as previously discussed, Plaintiffs' reliance upon Texas's alleged loss of tax revenue, *id.* at 22, is based on faulty assumptions and falls short.

### 4. Plaintiffs have not shown their claimed relief will redress their speculative injuries.

Plaintiffs try to lower their burden of proof under the redressability prong. ECF No. 63 at 27. But where "a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else*," redressability is substantially more difficult to show. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To satisfy their burden, Plaintiffs must "adduce facts showing that those choices [by third parties] have been or will be made in such manner as to produce causation and permit redressability of injury." *Id.* at 562. Thus, Plaintiffs must show how the grant of their requested relief—an injunction against the Pause, Compl ¶ 248.j., ECF No. 1—will result in increased investment by the seven applicants. Plaintiffs have made no such showing.

*Inclusive Communities Project, Inc. v. Department of Treasury*, 946 F.3d 649 (5th Cir. 2019) is instructive on this point. There, like here, the plaintiff tried to show redressability based on injuries from a government action it was not the direct object of. *Id.* at 655-656. The Court, relying on *Lujan*, found the links of causation between the government action and plaintiff's claimed injuries "hazy at best," and concluded the plaintiff failed to establish redressability. *Id.* at 656. The Court reasoned that because it was unclear what effect the government action had on the plaintiff, it was "similarly

uncertain" how the requested relief would affect the conduct of the third parties (if at all) and how those actions would in turn redress the plaintiff's alleged injuries. *Id.* at 657-658. Similarly, here, Plaintiffs' injury and redressability claims rely on a speculative chain of events that are hazy at best and depend on complex market factors, most of which have nothing to do with the Update and Pause.

### C. Plaintiffs have not identified a final agency action for their APA claims.

An agency action is final only when these two prongs are met—first, the action cannot be "tentative or interlocutory," and second, the agency action must "impose[] an obligation, den[y] a right, or fix[] some legal relationship." *Veldhoen v. U.S. Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994). Under Plaintiffs' reading of the first prong, every step in an agency's decision-making process is effectively a "final decision" that can be challenged if the agency will not revisit that step. ECF No. 63 at 31. For example, an agency's decision whether to prepare an environmental impact statement or an environmental assessment under the National Environmental Policy Act ("NEPA") would mark "the consummation of the agency's decision-making process" and could be challenged. But an agency's decision about what type of NEPA document to prepare cannot be challenged; only the final NEPA document, as incorporated into a final decision, can be challenged. *See, e.g., Ctr. for Marine Conservation v. Brown*, 917 F. Supp. 1128, 1150 (S.D. Tex. 1996). The same holds true for DOE's process of authorizing LNG exports, whether it be decisions about when to provide notice, what type of notice to provide, what issues to consider, what studies to rely upon, and so on. Plaintiffs cannot challenge every interlocutory step along DOE's path to a final order.

The second prong is even more problematic for Plaintiffs. DOE's Pause does not obligate anyone to do anything, does not deny a right, and does not fix a legal relationship. Plaintiffs' citations to *Data Mktg. P'ship, LP v. United States Dep't of Lab.*, 45 F.4th 846, 853 (5th Cir. 2022), and *Nat. Res. Def. Council v. Wheeler*, 955 F.3d 68, 84 (D.C. Cir. 2020), ECF No. 63 at 31-32, are misplaced. In *Data Marketing Partnership*, the court considered whether a federal agency's advisory opinion, which

10

concluded a proposed group health plan did not qualify as an employee welfare benefit plan under federal law, constituted final agency action. 45 F.4th at 853. The court found the opinion was final agency action because the agency was not going to review its decision and the opinion had the legal effect of denying plaintiffs the safe harbor of federal preemption, exposing them to state insurance regulation. *Id.*) By contrast, here, DOE's Update and Pause do not opine on anyone's legal rights or result in any legal effects.

*Natural Resources DefenseCouncil* is also inapposite. In that case, the court found final agency action where the agency suspended a rule with the effect of re-instituting a prior regulation. 955 F.3d at 84. Because the suspension subjected the regulated parties to the preexisting regulations, the court concluded the agency's rule altered legal obligations. But here, DOE's Update and Pause do not alter any rights or obligations; instead, they are an intermediate step in DOE's adjudicative process to ensure DOE relies on accurate information when making its public interest determinations as required by the NGA.[5] DOE's Update and Pause, which are similar to prior updates and pauses (ECF No. 56 at 10-13), are inherently interlocutory in nature and not final agency action.

## II. Counts I–IV, XII, and XIV–XVI should be dismissed under Rule 12(b)(6).

### A. DOE's Pause is well within the scope of its authority under the NGA.

Counts I, II, and XIV–XVI all rise or fall on the issue— if the NGA vests DOE with sufficient discretion to pause adjudicating final authorizations until the Update is completed, then DOE's Pause: (1) is not contrary to law, (2) is authorized by statute, (3) is not an unconstitutional executive overreach beyond the scope of congressional authorization, and (4) is not ultra vires.

Plaintiffs concede that the NGA allows DOE to update its economic and environmental studies. Thus, Plaintiffs' only argument is that the NGA precludes DOE from waiting for those

---

[5] The opinions cited by Defendants, all of which involved agency processes held not to constitute final action, are more on point. ECF No. 56 at 34 n.18. Plaintiffs dismissively characterize them as "readily distinguishable not to mention non-binding" (ECF No. 63 at 32 n.59) but do nothing to actually distinguish them.

updated studies before making public interest determinations for pending export applications. In other words, DOE can update information it has determined to be stale, but Plaintiffs say DOE must continue to finalize applications using that stale information because the NGA does not permit any delays. Nothing in the text of the NGA supports this incongruous interpretation and requires DOE to issue a poorly supported (and legally vulnerable) decision while it updates its analyses.

In considering NGA § 717r, the Supreme Court noted that judicial "review is limited to keeping the [agency] within the bounds which Congress has created." *Colo. Interstate Gas Co. v. Fed. Power Comm'n*, 324 U.S. 581, 589 (1945). The Supreme Court thus affirmed that "[w]hen Congress . . . fails to provide a formula for the [agency] to follow courts are not warranted in rejecting the one which the [agency] employs unless it plainly contravenes the statutory scheme of regulation." *Id.* The Fifth Circuit has likewise noted that courts "ordinarily will defer to an agency's choices concerning its procedures because in making such choices agencies are best situated to determine how they should allocate their finite resources." *Superior Oil Co. v. FERC*, 563 F.2d 191, 200 (5th Cir. 1977); *see also Transwestern Pipeline Co. v. FERC*, 820 F.2d 733, 738 (5th Cir. 1987).

The NGA does not prescribe the criteria DOE should use in making its public interest determination. 15 U.S.C. § 717b. Plaintiffs concede as much by admitting DOE can update and consider economic and environmental analyses. ECF No. 63 at 4. The NGA also does not prescribe a timeframe for DOE's public interest determination.[6] *See* 15 U.S.C. § 717b. Given the broad discretion agencies have in applying public interest standards,[7] DOE's Update (as conceded by

---

[6] Plaintiffs suggest without basis that because the NGA states that DOE "shall issue such order on application," there is an implicit timeframe for doing so. ECF No. 36 (citing 15 U.S.C. § 717b(a)). Congress knows how to prescribe timeframes for an agency to act but has not done so here. *See, e.g., Gonzalez v. Cuccinelli*, No. 19-1435, 2021 WL 127196 (4th Cir. Jan. 14, 2021). In any event, as explained above, if a party with a pending application before DOE disagrees, then that party could file a mandamus petition in a court of appeals and test this theory.

[7] *See FCC v. WNCN Listeners Guild*, 450 U.S. 582, 593 (1981) (noting a public interest standard is recognized as an "instrument for the exercise of discretion by the expert body which Congress has charged to carry out its legislative policy"); *see also Syracuse Peace Council v. FCC*, 867 F.2d 654, 658 (D.C. Cir. 1989) (same).

Plaintiffs) and Pause do not "plainly contravene" the NGA's "statutory scheme of regulation." *Colo. Interstate Gas Co.*, 324 U.S. at 589. To the contrary, DOE—recognizing the unprecedented changes in the LNG market—acted well within the scope of its authority by announcing the need to update economic and environmental analyses for its public interest decisions. DOE should not be punished for being transparent that it will not issue final determinations on applications pending its Update of outdated technical studies—an action that is both responsible and compliant with the statute. The Court should reject Plaintiffs' invitation to add non-existent text to the NGA and require DOE to make final decisions where it lacks sufficient information to make its public interest determination. Counts I, II, and XIV–XVI fail to state a claim.

### B. The Update is a component of DOE's adjudicatory process, not a rule.

The Court should likewise dismiss Count III because the Update is part of DOE's informal adjudicative process for evaluating individual applications LNG export to non-FTA countries, not a "rule" requiring notice and comment under the APA. While Plaintiffs do not challenge that adjudicative process, they continue to incorrectly argue that the Pause falls outside that process and is instead distinct rulemaking. But Plaintiffs wholly fail to establish how the Update or Pause qualify as a "rule", which is "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy . . . ." 5 U.S.C. § 551(4). Technical studies do not become "rules" by virtue of DOE's repeated reliance on those studies in individual adjudications.

As part of DOE's case-by-case review of applications, DOE develops an evidentiary record, which includes technical economic and environmental studies. ECF No. 56-1, ¶ 20. These technical studies are being updated as we speak, and the purpose of the Pause is to allow their completion so that DOE can avoid potentially uninformed or outdated public interest decisions. Nothing about DOE's process for adjudicating non-FTA export applications is being changed by the Update or

13

Pause. DOE's statutory presumption in favor of authorization has not changed, and applications to export LNG to non-FTA countries will continue to be authorized unless DOE finds a proposed export is not consistent with the public interest. ECF No. 56-5, ¶ 41. Thus, the rights of applicants for exports of LNG to non-FTA countries are unchanged from January 26, when the Update and Pause were announced. Simply put, the Update and Pause do not "implement, interpret, or prescribe law or policy." 5 U.S.C. § 551(4). Under Fifth Circuit precedent, the Update and Pause are not a substantive rule that requires notice-and-comment rulemaking. *Texas Sav. & Cmty. Bankers Ass'n v. Fed. Hous. Fin. Bd.*, 201 F.3d 551, 556 (5th Cir. 2000). The Court should dismiss Count III.

### C. The Update is consistent with DOE's July 2023 Order.

Count IV also fails on the merits because the Update is entirely consistent with DOE's July 2023 order declining to undertake a rulemaking to promulgate new non-FTA export application review procedures. Plaintiffs are challenging an information gathering exercise—namely, the Update and Pause that DOE is implementing to address stale studies and to ensure that it is relying on the most up-to-date technical information in making its public interest determinations on non-FTA export applications. By contrast, the July 2023 Order denied a petition filed by environmental groups requesting DOE undertake a new rulemaking that would *overhaul its entire process and substantive criteria for reviewing applications to export LNG to non-FTA countries.* U.S. Dep't of Energy, *Order Denying Petition for Rulemaking on Exports of Liquefied Natural Gas* (July 18, 2023), https://perma.cc/TB8Y-56TV ("Order Denying Rulemaking Petition"). Because DOE denied the groups' rulemaking petition, DOE found there was "no factual or legal basis" to grant the groups' related requests to produce a programmatic Environmental Impact Statement to support that rulemaking and to halt approval of pending non-FTA export applications during that requested rulemaking. *Id.* at 9, 27.

Far from being an arbitrary and capricious "about-face," as Plaintiffs allege, *see* ECF No. 63 at 42, the Update is entirely consistent with the July 2023 Order. In fact, in the July 2023 Order, DOE

expressly affirmed its commitment to case-by-case adjudications of non-FTA export applications and developing a record in each adjudicatory proceeding that incorporates up-to-date information on LNG markets, energy security issues, environmental concerns, and other factors bearing on the public interest. *Order Denying Rulemaking Petition* at 4-5, 27 (affirming DOE's commitment to "continuing to update the economic and environmental studies, analytical approaches, and public interest factors . . . based on developing facts and circumstances"). Because the Update is not a change from the July 2023 Order—and, indeed, is a direct extension of DOE's statements in it—DOE has nothing to acknowledge and explain. *See Wages & White Lion Invs., L.L.C. v. FDA*, 90 F.4th 357, 381 (5th Cir. 2024). Count IV fails to state a claim.

### D. An alleged violation of the Congressional Review Act is unreviewable.

For similar reasons, Plaintiffs' Congressional Review Act ("CRA") claim (Count XII) fails as a matter of law. The Update and Pause are not a substantive rule subject to the Act's provisions. Moreover, Congress explicitly stated that "[n]o . . . omission under this chapter shall be subject to judicial review." 5 U.S.C. § 805. Plaintiffs cite a single, out-of-circuit district court case for the proposition that Congress could not have possibly meant what it said. *See* ECF No. 63 at 50 n.64 (citing *Tugaw Ranches, LLC v. U.S. Dep't of the Interior*, 362 F. Supp. 3d 879, 882–85 (D. Idaho 2019)). But the "reasoning in *Tugaw Ranches* is flawed and a minority view." *See, e.g.*, *Kansas Nat. Res. Coal. v. U.S. Dep't of Interior*, 971 F.3d 1222, 1235 (10th Cir. 2020). This Court should follow the majority rule—that the CRA explicitly precludes judicial review—and dismiss Count XII.

### III.    Conclusion

The Court should dismiss Plaintiffs' Complaint for lack of jurisdiction, or alternatively, should dismiss Counts I–IV, XII, and XIV–XVI for failure to state a claim.

Respectfully submitted this 13th day of June, 2024.

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

/s/ J. Scott Thomas

J. SCOTT THOMAS
KATHARINE LAUBACH
MAGGIE WOODWARD
Trial Attorneys
Natural Resources Section
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Telephone: (202) 514-3553 (Thomas)
Telephone: (202) 305-8568 (Laubach)
Telephone: (202) 305-4224 (Woodward)
jeffrey.thomas2@usdoj.gov
katharine.laubach@usdoj.gov
maggie.woodward@usdoj.gov

THOMAS SNODGRASS
JEFFREY CANDRIAN
Trial Attorneys
Natural Resources Section
999 18th St., South Terrace, Suite 370
Denver, Colorado 80202
Ph: 303-844-1382 (Candrian)
Email: Jeffrey.candrian@usdoj.gov

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2024, I electronically filed **Defendants' reply in support of their motion to dismiss** with the Clerk of Court using the ECF system, which will automatically send email notification to the attorneys of record.

*/s/ J. Scott Thomas*
JEFFREY SCOTT THOMAS